Filed 3/30/21  P. v. Young CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | A159116 |
| v. | (Contra Costa County Super. Ct. No. 50811471) |
| BRIAN YOUNG, | |
| Defendant and Appellant. | |

Penal Code[1] section 1170.95 permits a person convicted of second degree murder under the natural and probable consequences doctrine to petition to vacate his conviction and be resentenced on any remaining counts.  As the trial court erred in summarily denying defendant Brian Young's section 1170.95 petition without issuing an order to show cause and holding an evidentiary hearing, we reverse and remand the matter for further proceedings.

---

[1]     All further undesignated statutory references are to the Penal Code.

1

## I.    Background

The facts are taken, in part, from our prior decision affirming Young's convictions for shooting at an occupied vehicle (§ 246) and second degree murder (§187), together with related firearm and sentence enhancement allegations (§§ 190, subd. (d); 12022.5, subd. (a); 12022.53, subds. (b)-(d)).  (*People v. Young* (Mar. 28, 2014, as modified, Apr. 24, 2014, A134248) [nonpub. opn.] (*Young I*).)

On the evening of April 3, 2008, two cars were traveling westbound on Interstate 80 in Contra Costa County.  A Dodge was being driven by Tania Sheppard; her boyfriend Aaron Myers was in the front passenger seat and their friend Young was in the rear seat.  A Pontiac was being driven by the victim Rhonda White (White), who was a relative and friend of Sheppard and a close friend of Myers and Young.  Also in White's car were D.A., S.W., C.R. and A.D.[2], all of whom also knew Sheppard, Myers and Young.

White's Pontiac was behind and to the left of the Dodge, when White recognized her friends in the Dodge.  White sped up to overtake the Dodge, and White and D.A. signaled to the people in the Dodge.  Multiple shots from two weapons were fired from the Dodge into the Pontiac, which shattered the driver's side windows of the Dodge and passenger side windows of the Pontiac.  White was killed, and D.A.— seated in the front passenger seat—was wounded.

Sheppard and Myers were charged with the same offenses as Young: murder (White) (§187) and attempted murder (one count per

---

[2]    Pursuant to the California Rules of Court, rule 8.90, governing "Privacy in Opinions," we refer to certain persons by their initials.

passenger in White's car) (§§ 187, 664), with related firearm enhancements (§ 12022.53, subds. (b)-(d)), and shooting at an occupied vehicle (§ 246). Sheppard entered into a plea agreement. Myers was tried and found guilty of one count of voluntary manslaughter and four counts of attempted voluntary manslaughter, together with a firearm enhancement and shooting at an occupied motor vehicle. Myers' conviction was affirmed on appeal.

### A.    *Young's Trial and Direct Appeal*

A major issue at Young's trial was motive: " 'How could two friends [Myers and Young] have shot and killed a close friend, and shot and wounded another friend? One answer was that . . . Myers had recently been shot, and [Young] had recently been fired upon. A second answer was [White's] overtaking [Sheppard's] car late at night, with people in [White's] car making hand movements. A third answer was that . . . Myers came to the mistaken conclusion that they were under attack by people in the Pontiac. The final answer was that [Young], in the rear seat of the Dodge, misinterpreted the gunfire and breaking glass of the Dodge's driver's side windows as shots being fired into his car from the Pontiac.' "

Because Young " 'took the stand and admitted having had a gun and having fired at the other car,' " there were " 'few issues' " to be resolved by the jury. " 'One issue concerned who had which weapon, when a pistol and an assault rifle had been used. Another issue concerned whether it was [Myers or Young] who had first fired. The final and most significant issue concerned [Young's] intent and belief when he fired. [¶] [Young] told the jury that he had been in the rear seat, just waking up, when he heard semiautomatic gunfire and became

3

aware the windows in his car were shattering. He believed his car was under attack, and he reached into his duffle bag for a .380 pistol which he blindly fired out the window, without an intent that anyone be killed.' ”

Sheppard testified she did not see the shooting because Myers had pushed her head into her lap and then shot over her head through the driver's side window. After the shooting stopped, Sheppard lifted her head and drove but her car hit something in the road. She stopped the car and she, Myers, and Young left the scene, not knowing who was in the other vehicle and not knowing if anyone had been shot. Sheppard did not know which gun had been fired by Myers or Young. As Myers and Young entered her car they were not carrying any weapons. When Young entered the car he was carrying a duffle bag big enough to hold a rifle, and when he left the car he had a long metal object that could have been a rifle under his jacket, but Sheppard never actually saw a rifle. Some months before the incident, Sheppard was present when the police came to Myers' house and confiscated an AK-47 assault rifle.

Deputy Sheriff Criminalist Donald Finley, a firearms expert, testified that a search of Sheppard's Dodge revealed two expended .380 cartridge cases likely fired from an automatic pistol and fourteen expended 7.62 cartridge cases likely fired from an AK-47 assault rifle. The .380 cartridge cases were found in the front of the car, while the 7.62 cartridge cases were found in both the front and the rear. Finley could not opine whether the weapons were fired from the front or back seat or who possessed which weapon when they were fired. Ikechi Ogan, M.D., an expert in forensic pathology, testified that White died of

4

multiple gunshot wounds, but could not identify the caliber of bullets that caused the wounds.

The jury was instructed with regard to the murder charge on first and second degree murder with malice aforethought (CALCRIM No. 520) along with aiding and abetting liability (CALCRIM Nos. 400—general principles, 401—intended crime, and 402—natural and probable consequences doctrine for accomplice liability). The jury was also instructed on the firearm enhancement allegations (e.g., CALCRIM Nos. 3149 & 3150) and a sentence enhancement that focused on the manner of the killing (CALCRIM No. 525—discharging a firearm from a motor vehicle).

The jury convicted Young of shooting at an occupied motor vehicle (§ 246) and second degree murder (§187), together with true findings on the firearm enhancements (during the commission of the murder defendant (1) personally used and discharged a firearm; and (2) personally and intentionally discharged a firearm causing great bodily injury or the death of the victim (§§ 12022.5, subd. (a); 12022.53, subds. (b)-(d))) and the sentence enhancement (killing perpetrated by intentionally shooting a firearm from a motor vehicle at a person outside the vehicle with the intent to inflict great bodily injury (§ 190, subd. (d)). The jury was unable to reach a verdict on four counts of attempted murder; those counts were later dismissed. Young was sentenced to an aggregate term of 50 years, later modified to 73 years to life by the trial court.

On direct appeal, Young did not challenge the sufficiency of the evidence but rather argued purported instructional and sentencing errors. We affirmed the conviction but remanded the matter for

resentencing. (*Young I*, *supra*, at p. 1.) The Supreme Court denied Young's petition for review. (July 14, 2014, S218266.) Young was resentenced to an aggregate term of 45 years to life.

### B. *Young's Section 1170.95 Proceeding*

On February 20, 2019, Young, appearing in propria persona, filed a section 1170.95 petition, using a downloadable form petition and declaration prepared by "Re: Store Justice." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 324, rev. granted Mar. 18, 2020, S260493 (*Verdugo*); see *People v. Edwards* (2020) 48 Cal.App.5th 666, 670, rev. granted July 8, 2020, S262481.) Young, by checking boxes on the form petition and declaration, averred that: (1) an information was filed against him that allowed the prosecution to proceed under a theory of murder based on "the natural and probable consequences doctrine"; (2) he was convicted of second degree murder; and (3) he could not now be convicted of second murder because of changes to section 188, effective January 1, 2019, together with averments that he was not the actual killer and did not, with the intent to kill, aid or abet the murder. He attached to his petition several documents, including certain jury instructions and our decision in *Young I*. The superior court appointed counsel for Young, and both Young's appointed counsel and the People submitted additional briefing and portions of the trial testimony transcript.

On September 10, 2019, the trial court summarily denied the petition without issuing an order to show cause or holding an evidentiary hearing. The court found Young was not entitled to relief because he had not made a prima facie showing that he could not be convicted of murder under the new law. According to the court, the

6

jury "necessarily found beyond a reasonable doubt (1) that [Young] himself intentionally shot from the Dodge in which he was riding at the occupants of the Pontiac being driven by [White], (2) that he did so with the specific intent to inflict great bodily injury on the occupants of the Pontiac, and (3) that, in doing so, defendant proximately caused great bodily injury or death to [White] and [D.A.]," and "necessarily" rejected Young's "claims of self-defense and imperfect self-defense."

The court continued: "In *People v. Chun* (2009) 45 Cal.4th 1172 [(*Chun*)], the California Supreme Court held—under nearly identical facts—that <u>no</u> reasonable juror who found that a defendant had participated (as a shooter or as an aider and abettor) in firing multiple rounds at close range from one car into another car occupied by three people could fail to find that the defendant had committed an act that is dangerous to human life and did so knowing of the danger and with conscious disregard for life.  [(*Id.*, at p. 1205.)]  This is the very definition of implied malice murder, a perfectly valid theory of murder under the current law.  Based on the jury's specific verdicts and findings, and on the Supreme Court's holding in *Chun*, the defendant indisputably could be convicted of murder today."  (Underlining in original.)  "Therefore, the defendant has failed to make a prima facie showing that he is entitled to relief under Penal Code section 1170.95."

Young timely appealed.

## DISCUSSION

## I.  Applicable Law Governing Murder Convictions Under the Natural and Probable Consequences Doctrine

Section 1170 was enacted as part of Senate Bill No. 1437 (Stats. 2018, ch. 1015; hereafter SB 1437).  Before the enactment of SB 1437,

7

the law provided that "a defendant who aided and abetted a crime that ended in a victim's death could be convicted of murder under the natural and probable consequences doctrine even if the defendant personally did not act with malice aforethought." (*People v. Offley* (2020) 48 Cal.App.5th 588, 595, fn. omitted (*Offley*).) " ' "By its very nature, aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all. It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense." ' " (*Ibid.*)

SB 1437 abolished the natural and probable consequences doctrine for cases of first and second degree by amending section 188, subdivision (a) (hereafter section 188(a)) to require, with one exception not relevant here [3], that "a principal in the crime of murder 'shall act with malice aforethought,' and that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Offley*, *supra*, 48 Cal.App.5th at p. 595, fn. omitted.) Hence, the amendment to section 188(a) bars a conviction for first or second degree murder under a natural and probable consequences theory. "By its terms, section 188

_____

[3] The sole exception, felony murder, is not relevant as Young was not charged with a predicate felony that could serve as the basis for felony murder. Shooting at an occupied motor vehicle (§246)–the crime he is alleged to have aided and abetted–does not qualify. (*Chun*, *supra*, 45 Cal.4th at p. 1200), and the jury was not instructed on felony murder. Accordingly, we do not address Young's appellate contentions based on the amended felony-murder rule in section 189 and the related concepts of "major participant" and "acted with reckless indifference to human life," as discussed in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522.

(a)(3) permits a second degree murder conviction only if the prosecution can prove the defendant acted with the accompanying mental state of mind of malice aforethought.  The prosecution cannot 'impute[ ] [malice] to a person based solely on his or her participation in a crime.' (*Ibid.*)" (*People v. Gentile* (2020) 10 Cal.5th 830, 846.)  In other words, "[t]he natural and probable consequences doctrine authorizes precisely what Senate Bill 1437 forbids: it allows a fact-finder to impute malice 'to a person based solely on his or her participation in a crime.'  (§ 188(a)(3).)  Under the doctrine, 'individuals lacking the mens rea and culpability for murder [are] punished as if they were the ones who committed the fatal act.' " (*Gentile, supra*, at p. 847.)

Section 1170.95 subdivision (c) (hereafter section 1170.95(c)) provides the procedure by which a defendant convicted of second degree murder under the natural and probable consequences doctrine may petition to have the conviction vacated and to be resentenced on the remaining counts: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

"By its text, section 1170.95(c) . . . requires the trial court to make two assessments.  The first is whether the petitioner has made a

9

prima facie showing of *eligibility* for relief. A petitioner is eligible for relief if he or she makes a prima facie showing of the three criteria listed in section 1170.95 [, subdivision] (a) [(hereafter section 1170.95(a))]—namely he or she (1) was charged with murder 'under a theory of . . . murder under the natural and probable consequences doctrine,' (2) was convicted of . . . second degree murder, and (3) can no longer be convicted of . . . second degree murder 'because of changes to Section 188 or 189 made effective January 1, 2019.' " (*People v. Drayton* (2020) 47 Cal.App.5th 965, 975-976 (*Drayton*).) If the trial court has determined the petitioner has made a prima facie showing of eligibility for relief by a showing of the three conditions in section 1170.95(a), then the court "proceeds to the 'second' inquiry into the prima facie showing under section 1170.95(c)," to determine if an order to show cause should be granted after the appointment of counsel for petitioner and additional briefing by the parties. (*Drayton, supra*, at p. 976.) [4]

"Once the trial court issues the order to show cause under section 1170.95(c), it must then conduct a hearing pursuant to the procedures

---

[4] We acknowledge a conflict between the appellate courts as to whether section 1170.95(c) requires only one prima facie review (*People v. Cooper* (2020) 54 Cal.App.5th 106, 118, rev. granted Nov. 10, 2020, S264684), or two prima facie reviews—one before the court appoints counsel or orders a response from the People, and a second before the court issues an order to show cause and sets an evidentiary hearing (see, e.g., *People v. Harris* (2021) 60 Cal.App.5th 939, 952; *Drayton, supra*, 47 Cal.App.5th at pp. 974-977; *Verdugo, supra*, 44 Cal.App.5th at p. 327). We need not address this conflict as the trial court appointed counsel for Young and considered additional briefings filed by the People and Young's counsel. Thus, the only issue on appeal is whether the court erred in summarily denying the petition without issuing an order to show cause and holding an evidentiary hearing.

and burden of proof set out in section 1170.95, [subdivision] (d) unless the parties waive the hearing or the petitioner's entitlement to relief is established as a matter of law by the record.  (§ 1170.95, subd. (d)(2).) Notably, following the issuance of an order to show cause, the burden of proof will shift to the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)"  (*Drayton*, *supra*, 47 Cal.App.5th at pp. 980-981.)

## II.    Trial Court Properly Found Young Met the First Two Conditions for a Prima Facie Showing Under Section 1170.95(c)

The People dispute whether Young's petition, together with the record of conviction (which included our decision on his direct appeal) [5], established the first two eligibility factors necessary for section 1170.95 relief:  (1) he had been charged in an information that allowed the prosecution to seek a conviction of second degree murder under the natural and probable consequences doctrine; and (2) his conviction for second degree murder could have been premised on the natural and probable consequences doctrine. (§ 1170.95(a)(1),(2).)

First, the record of conviction shows Young was charged in an information with the crime of murder under section 187, which allowed the People to seek a conviction of second degree murder under the natural and probable consequences doctrine.  (§ 1170.95(a)(1); see *People v. Contreras* (2013) 58 Cal.4th 123, 149 ["a murder charge under

---

[5]    We recognize that our Supreme Court will ultimately resolve the issue of whether superior courts may consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, rev. granted Mar. 18, 2020, S260598 [lead case].)

11

section 187 places the defense on notice of, and allows trial and conviction on, all degrees and theories of murder"]; *People v. Abel* (2012) 53 Cal.4th 891, 937 ["an accusatory pleading charging murder need not specify the theory of murder upon which the prosecution intends to rely"].)  Second, the jury was given several theories of murder liability, including the now invalid theory of aider and abettor liability under the natural and probable consequences doctrine using the language in CALCRIM No. 402. [6]  Therefore, Young made a prima facie showing of the first two factors for eligibility for relief under section 1170.95.

_____

[6]    The jury was instructed using the language in CALCRIM No. 402 as follows: "The defendant is charged in [C]ount [6] with Penal Code Section 246, 'shooting at an occupied vehicle' and in [C]ounts [1-5] with murder and attempted murder. [¶] You must first decide whether the defendant is guilty of [C]ount [6]. If you find the defendant is guilty of this crime, you must then decide whether he is guilty of [C]ounts [1-5]. [¶] Under certain circumstances, a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time. [¶] To prove that the defendant is guilty of murder and attempted murder, the People must prove that: [¶] 1. The defendant is guilty of shooting at an occupied motor vehicle; [¶] 2. During the commission of shooting at an occupied motor vehicle a coparticipant in that shooting at an occupied motor vehicle committed the crime of murder and attempted murder; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of murder and attempted murder was a natural and probable consequence of the commission of shooting at an occupied motor vehicle. [¶] A coparticipant in a crime is the perpetrator or anyone who aided and abetted the perpetrator."

12

## III. Trial Court Erred in Finding Young Failed to Meet the Third Condition for a Prima Facie Showing Under Section 1170.95(c)

In finding that Young had failed to make a prima facie showing of section 1170.95(a)'s third condition—that he could not be convicted of second degree murder under the new law—the court concluded that "<u>no</u> reasonable juror could have found" Young guilty of second degree murder without necessarily finding he acted with implied malice, which is still a valid theory under the new law.

However, we agree with our colleagues in Division Two that "the trial court erred in two respects, first, by denying relief at the prima facie stage on the ground that there was substantial evidence from which a reasonable trier of fact *could* reach a guilty verdict of [second degree implied malice murder] and second, by engaging in judicial fact[-]finding at the prima facie stage rather than holding an evidentiary hearing." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 810-811 (*Duchine*); italics in original; see *Drayton*, *supra*, 47 Cal.App.5th at pp. 981-982 [trial court erred in applying "substantial evidence" review and engaging in fact-finding at prima facie stage]; but see *People v. Garcia* (2020) 57 Cal.App.5th 100, 116 [disagreeing with *Drayton*], rev. granted Feb. 10, 2021, S265692.)

We reject the People's argument that the trial court's summary denial may be upheld because "the jury's findings establish" that Young "was directly rather than vicariously liable" for the murder and "the shots [he] fired were at least a concurrent cause of the death." In evaluating a petition at the prima facie stage, "if a defendant[, as in this case,] asserts he lacked the requisite intent or did not act in a

13

manner that would make him liable under still-valid murder theories, unless the record of conviction refutes those assertions *as a matter of law*, the defendant has met his prima facie burden. (*Drayton, supra,* 47 Cal.App.5th at p.980.)" (*Duchine, supra,* 60 Cal.App.5th at p. 813, italics in original.) Despite the People's arguments to the contrary, the jury's verdicts and enhancement findings do not demonstrate*, as a matter of law*, that the jury necessarily found Young personally acted with malice of aforethought as now required under section 188.

As set forth in our prior opinion, the jury could have found Young guilty as either a principal or aider and abettor of second degree murder under an implied malice theory. However, the jury was also instructed it could find Young guilty of second degree murder under the now invalid natural and probable consequences doctrine for accomplice liability. If the jury relied solely on that latter doctrine, it could have found Young guilty without necessarily finding that he personally possessed express malice (acted with "an intent to kill") or implied malice ("actually appreciated the risk" of his action, it being " 'not enough that a reasonable person would have been aware of the risk' "). (*Offley, supra,* 48 Cal.App.5th at p. 598 [defining express and implied malice].)

In other words, to convict Young under the old law allowing the application of the natural and probable consequences doctrine, his "mens rea" as an "aider and abettor" would have been "irrelevant" and he could have been found culpable for murder "simply because a reasonable person could have foreseen the commission of the murder." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 852.) Additionally, the jury's true findings on the firearm enhancement under section

12022.53, subdivision (d), and the sentence enhancement under section 190, subdivision (d), did not require the jury to find that Young "harbored a particular mental state as to the victim's injury or death." (*Offley*, *supr*a, 48 Cal.App.5th at p. 598.) And, neither instruction required the jury to find that Young had "intended to kill or was aware of the danger to the life that his act posed." (*Ibid.*)

The record of conviction reflects many disputed issues. While the jury was informed that both Young and Myers fired their guns at White's vehicle, there was no clear evidence as to who fired first, who held which gun, or which bullets fatally wounded White. Further, Young testified he did not intend to kill anyone in the other vehicle and had blindly fired his .380 automatic pistol out the window after being awakened by semiautomatic gunfire and believing his car was under attack. Given the subjective mental component of implied malice and the evidence regarding Young's actions, we cannot rule out the possibility that the jury convicted defendant of second degree murder without an additional finding that he had *personally* acted with implied malice as now required under the new law.

The People's reliance on *People v. Roldan* (2020) 56 Cal.App.5th 997 (*Roldan*), review granted January 20, 2021, S266031, and *People v. Cornelius* (2020) 44 Cal.App.5th 54 (*Cornelius*), review granted March 18, 2020, S260410, is misplaced as in those cases the defendants were the sole perpetrators of murder and not accomplices under the natural and probable consequences doctrine. In stark contrast, Young's record of conviction does not demonstrate *as a matter of law* that his conviction for second degree murder "was not based on the natural and probable consequences doctrine," and that "the jury must have

15

convicted" him *"on the basis of his own malice aforethought."* (*Offley, supra,* 45 Cal.App.5th at p. 599; italics added [appellate court could not rule out possibility that jury convicted defendant of murder on the natural and probable consequence doctrine because the jury was instructed on that theory and a true finding on a section 12022.53, subdivision (d) firearm enhancement did not require the jury to find defendant acted either with the intent to kill or with conscious disregard to life].)

## IV. Conclusion

We conclude the trial court erred in summarily denying the petition. It "engaged in judicial fact-finding on issues not conclusively resolved by the record of conviction at the prima facie stage of the petition proceedings." (*Duchine, supra,* 60 Cal.App.5th at p. 816.) The implied malice finding "the trial court made based solely on the record evidence entail[ed] the weighing of evidence, drawing of inferences, and assessment of credibility that should be left to the fact[-]finding hearing process contemplated by section 1170.95, subdivision (d). (*Drayton, supra,* 47 Cal.App.5th at p. 982.) [Young] was entitled to a hearing at which the prosecutor would bear the burden to prove beyond a reasonable doubt, based on the record of conviction and any additional evidence the parties submitted, that he was guilty of murder under a theory still valid under California law." (*Duchine, supra,* at p. 816.) We express no opinion on how the trial court should rule following the order to show cause hearing.[7]

---

[7] We recognize that currently pending in our Supreme Court is an issue that may arise during further proceedings on this petition: "Can the People meet their burden of establishing a petitioner's ineligibility for resentencing at an evidentiary hearing under Penal Code section

## DISPOSITION

The September 10, 2019 order denying the Penal Code section 1170.95 petition is reversed and the matter is remanded to the trial court with directions to issue an order to show cause under Penal Code section 1170.95, subdivision (c) and hold a hearing under Penal Code section 1170.95, subdivision (d) to determine whether to vacate Brian Young's second degree murder conviction, recall the sentence, and resentence him.

---

1170.95, subdivision (d)(3), by presenting substantial evidence of the petitioner's liability for murder under Penal Code sections 188 and 189 as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015) or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?" (*People v. Duke* (2020) 55 Cal.App.5th 113, 123 [upholding use of substantial evidence standard at the section 1170.95, subd. (d) evidentiary hearing], rev. granted Jan. 13, 2021, S265309; but see *People v. Clements* (2021) 60 Cal.App.5th 597, 618 [error to use substantial evidence standard at section 1170.95, subd. (d) evidentiary hearing]; *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 240-244[error to use substantial evidence standard at section 1170.95, subd. (d) evidentiary hearing], review granted Mar. 10, 2021, S266652 [briefing deferred until decision in *Duke*]; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949-950 [error to use substantial evidence standard at section 1170.95, subd. (d) evidentiary hearing], rev. granted Feb. 10, 2021, S265974 [briefing deferred until decision in *Duke*].)

17

_____

Petrou, J.

WE CONCUR:

_____

Fujisaki, Acting P.J.

_____

Wiseman, J.*

*People v. Young/A159116*

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.